IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| KYLE C. SIMS, | :: | MOTION TO VACATE |
|    Movant, | :: | 28 U.S.C. § 2255 |
| | :: | |
| v. | :: | CRIMINAL NO. |
| | :: | 1:19-CR-0294-WMR-RGV-1 |
| UNITED STATES OF AMERICA, | :: | |
|    Respondent. | :: | CIVIL ACTION NO. |
| | :: | 1:21-CV-0953-WMR-RGV |

# FINAL REPORT AND RECOMMENDATION

This matter has been submitted to the undersigned Magistrate Judge for consideration of Kyle C. Sims' pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, [Doc. 107], his counselled supplemental brief, [Doc. 150], the government's initial and supplemental responses, [Docs. 159; 164], and Sims' initial and supplemental replies, [Docs. 160; 167]. Following a September 20, 2022, evidentiary hearing, [Doc. 175], and having considered the motion, the evidence presented, and the parties' post-hearing briefs, [Docs. 176; 177; & 178], it is **RECOMMENDED** that Sims' § 2255 motion, [Doc. 107], as supplemented, [Doc. 150], be **DENIED**.

## I. PROCEDURAL HISTORY

A federal grand jury in the Northern District of Georgia returned a four-count indictment against Sims and two co-defendants, charging Sims in Count One with conspiracy to possess with the intent to distribute marijuana, cocaine, heroin, methamphetamine, and alprazolam, in violation of 21 U.S.C. §§ 841(b)(1)(C), 841(b)(1)(D), 841(b)(2), and 846; in Count Two with possession of a machinegun, in violation of 18 U.S.C. §§ 922(o) and 924(a)(2); and in Counts Three and Four with being a felon in possession of two different pistols in April and May of 2019, in violation of 18 U.S.C. § 922(g)(1).  [Doc. 12].  Represented by Vionnette Johnson and Byron Conway ("Conway") of the Federal Defender Program, Inc., Sims entered a negotiated guilty plea to Count Three, and the government agreed to dismiss the remaining counts.  [Docs. 61; 133].  In his written plea agreement, Sims acknowledged that the Court could consider the conduct underlying the dismissed counts as relevant conduct in calculating a reasonable sentence under the sentencing guidelines, the parties reserved their right to make recommendations regarding the guidelines except as expressly stated elsewhere in the agreement, and the government agreed to recommend a sentence at the low end of the adjusted guidelines range.  [Doc. 61-1 ¶¶ 11, 17, 19].  The plea agreement also contained an appeal waiver, in which Sims waived his rights to appeal, and to file collateral

attacks on, his conviction and sentence unless the government filed a direct appeal, he received ineffective of counsel, or the Court imposed a sentence exceeding the high end of the Sentencing Guidelines range as calculated by the Court (an upward departure or variance). [Id. ¶ 33].

At the plea hearing, Sims confirmed that he understood the terms of the plea agreement, including the limited waiver of appeal, that he had sufficient time to discuss this matter fully with his attorneys before entering his guilty plea, and that he was satisfied with his attorneys' representation. [Doc. 133 at 12, 14]. Sims also affirmed that he understood that the Court could not predict what his guidelines range would be, that the Court could impose a sentence above or below that range, and that he was giving up his right to appeal or collaterally attack his sentence unless there was an upward departure or variance from the guidelines, he received ineffective assistance of counsel, or the government filed an appeal. [Id. at 19-20].

At sentencing, Sims objected to a four-level enhancement for possession of the firearm in connection with another felony offense, but the Court overruled his objection. [Doc. 98 at 18-22, 25-28]. The Court determined that Sims' guidelines range was 100 to 125 months of imprisonment. [Id. at 29]. The government recommended a sentence at the low end of that range as agreed, and Sims argued for a sentence below the guidelines range. [Id. at 30-35]. The Court sentenced

3

Sims to 100 months of imprisonment. [Id. at 43; Doc. 86]. Sims did not file a direct appeal.

Sims timely filed this pro se § 2255 motion. [Doc. 107]. Sims argues that counsel provided him ineffective assistance by failing to file a notice of appeal as requested and that, even if he had not specifically requested an appeal, counsel had an affirmative duty to consult with him about an appeal because he expected a much lower sentence of 57 months. [Id. at 4-6; Doc. 107-1; Doc. 150 at 3-8]. In response, the government produced Conway's declaration, stating that he did not recall Sims asking him to file a notice of appeal but would have done so had Sims requested an appeal and that he did not find any records corroborating Sims' claim that he contacted counsel regarding an appeal. [Doc. 164-1 at 5-6]. Sims replied with his own declaration, asserting that he did ask Conway to file a notice of appeal. [Doc. 167-1]. The undersigned found that an evidentiary hearing was necessary, [Doc. 171], and held the evidentiary hearing on September 20, 2022, [Doc. 175].

## II.  DISCUSSION

A.  **Legal Standards**

A federal prisoner may file a motion to vacate his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that

4

the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982) (footnote omitted).

To show that counsel was ineffective for failing to file a notice of appeal, the defendant must demonstrate that counsel's failure was objectively unreasonable and prejudiced the defendant. Roe v. Flores-Ortega, 528 U.S. 470, 476-77 (2000). "[A] lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." Id. at 477. Furthermore, prejudice is presumed, and the defendant is entitled to an out-of-time appeal. Garza v. Idaho, 139 S. Ct. 738, 750 (2019). However, when the defendant has not asked counsel to file an appeal, the issue becomes whether counsel "consulted with the defendant about an appeal" by advising him "about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." Roe, 528 U.S. at 478.

If counsel did not adequately consult with the defendant about an appeal, the Court must determine whether counsel "had an affirmative duty to consult" with the defendant concerning an appeal. Thompson v. United States, 504 F.3d 1203, 1207 (11th Cir. 2007). The "constitutionally imposed duty to consult" arises when

5

either (1) "a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal)," or (2) the "particular defendant reasonably demonstrated to counsel that he was interested in appealing." Roe, 528 U.S. at 480. Additionally, the Court must consider whether the defendant has shown prejudice, i.e., "that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." Id. at 484. Moreover,

> the representations of the defendant, his lawyer, and the prosecutor at [a guilty plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).

**B.     Summary of Relevant Evidentiary Hearing Testimony**

Sims testified that Conway estimated Sims' expected guideline range as 57 to 70 months of imprisonment and that Conway never discussed the possibility of an enhancement for possessing the firearm in connection with another felony offense. [Doc. 175 at 5-6]. Sims believed that his appeal waiver would not prevent him from appealing "a problem with [his] sentencing." [Id. at 8-9]. Sims was

surprised to learn that the Court might apply a four-level enhancement for possessing the firearm in connection with another felony offense. [Id. at 10]. Sims discussed the enhancement with Conway, who advised him that it would not apply to him and that his low-end guidelines range would still be 57 months. [Id. at 10-11]. Sims decided he wanted to appeal when he received a 100-month sentence, which he did not anticipate, but he was unable to speak with Conway immediately after sentencing. [Id. at 12]. Sims testified that he wrote a letter to Conway two days after sentencing, instructing counsel to appeal the four-level sentence enhancement. [Id. at 15]. Sims also asserted that he had a friend, Samantha, initiate a three-way call with him to Conway's cell phone and that he again instructed Conway to appeal the four-level enhancement. [Id. at 16].

On cross-examination, Sims stated that Conway never told him that it was important to speak about his case privately with counsel and that they be the only two people on the call. [Id. at 20-21]. Sims further testified that no one ever gave him any instructions about how to use the jail phone to talk to his attorney and that he used the same jail phone to talk to his attorney that he used for other types of calls. [Id. at 20]. Sims does not have a copy of the letter that he mailed to Conway after sentencing. [Id. at 21]. Sims believed that a "variance" from the guidelines was the same as a sentencing enhancement. [Id. at 22]. However, Sims

7

acknowledged that counsel gave him the opportunity to ask any questions about any words in the plea agreement that he did not understand before entering into it. [Id.].

Conway testified that he "expressly" informs his clients that they should not discuss their cases over the jail phone "because they are typically recorded." [Id. at 35]. Conway stated that he would not discuss the substance of a client's case with another person on the phone line due to "privilege issues." [Id. at 36-37]. Conway also stated that, when he did receive calls with someone else on the line, he would discuss only "non work product things," such as the date of their next court appearance. [Id. at 37].

Conway testified that he did not recall receiving a letter from Sims instructing him to file an appeal, that he would recall such a letter had he received it because it would require him to have a conversation with his client about an appeal and to file an appeal if his client so instructed, and that he searched Sims' case file, as well as his other case files, for a letter from Sims asking him to appeal, but that he did not find any such letter from Sims. [Id. at 38-40, 42-43]. Any conversation about an appeal would have included a discussion of the appeal waiver and its exceptions and answering any questions the client had about them, and Conway did not recall having such a conversation with Sims within the time

8

for filing a notice of appeal. [Id. at 39-40, 42-43]. However, Conway did recall that, sometime after the time to appeal expired, Sims requested documents regarding the sentencing, and Conway also recalled a conversation with Sims' friend or family member on Conway's office phone following up on that request and confirming that he sent the requested documents. [Id. at 50-52].

C.  **Analysis**

Sims argues that he timely asked Conway to appeal his sentence in a letter and a subsequent three-way phone call and that, even if he had not done so, Conway had an affirmative duty to consult with him about an appeal because he received a sentence significantly higher than expected.[1] [Doc. 176 at 12-14]. The government responds that Sims did not instruct Conway to file an appeal and that, under the circumstance of this case, Conway had no duty to consult with Sims about an appeal. [Doc. 177 at 7-10]. Sims replies, challenging the government's

---

[1] Sims cites Rios v. United States, 783 F. App'x 886, 888 (11th Cir. 2019) (per curiam), to support his argument that Conway had a duty to consult with him about an appeal, but that case is distinguishable because the record in Rios was ambiguous as to whether the district court varied upward from the guidelines range, and thus, an exception to the appeal waiver may have applied, id., 783 F. App'x at 892. However, in this case, the record clearly shows there was no upward variance because Sims was sentenced to the low end of the guidelines range as calculated by the Court. [Doc. 98 at 29, 43].

characterization of Conway's testimony and reasserting his arguments for relief. [Doc. 178].

The evidence presented at the hearing established that Sims did not keep a copy of the letter he purportedly mailed to Conway after sentencing, [Doc. 175 at 21], and the undersigned finds credible Conway's testimony that, after a careful search of his files, he could not find a letter from Sims asking him to file an appeal and that he would have recalled such a letter because he would then have had a conversation with Sims about an appeal and would have filed an appeal if Sims had directed him to do so, [id. at 38-40, 42-43]. The undersigned does not find credible Sims' testimony that he asked Conway to file an appeal during a three-way call. Rather, the undersigned credits Conway's testimony that it was his policy not to discuss substantive case-related matters on telephone calls that included other people. [Id. at 36-37]. The undersigned further credits Conway's testimony that any conversation he had with a client about an appeal would have included a discussion of the appeal waiver and its exceptions and answering any questions the client had about them, and Conway did not recall having such a conversation with Sims within the time for filing a notice of appeal. [Id. at 38-40, 42-43]. Accordingly, the undersigned finds that Sims has not shown that he instructed Conway to file an appeal.

10

Furthermore, Sims has not shown that he reasonably demonstrated to Conway that he was interested in appealing. In his written plea agreement, Sims acknowledged that the Court could consider the conduct underlying the dismissed counts as relevant conduct in calculating a reasonable sentence under the Sentencing Guidelines, and the parties reserved their right to make recommendations regarding the guidelines except as expressly stated elsewhere in the agreement. [Doc. 61-1 ¶¶ 11, 17]. At the plea hearing, Sims acknowledged that he understood the terms of the plea agreement, that he had sufficient time to discuss this matter fully with his attorneys before entering his guilty plea, that he was satisfied with his attorneys' representation, that he explicitly waived his right to appeal or collaterally attack his conviction and sentence except in limited circumstances not applicable here, and that he understood that the Court could not predict what his guidelines range would be. [Doc. 133 at 12, 14, 19]. Sims has not met his "heavy burden" to show that the statements he made during his plea colloquy were false. See Patel v. United States, 252 F. App'x 970, 975 (11th Cir. 2007) (per curiam) (holding that self-serving allegations in § 2255 motion were insufficient to rebut the presumption that statements made during plea colloquy were true and correct). Sims entered a guilty plea, waived his right to appeal, and received a sentence at the low end of the guidelines range. Under these

circumstances, it is unlikely that a rational defendant would want to appeal, and therefore, the undersigned finds that Conway had no duty to consult Sims about an appeal. See <u>Devine v. United States</u>, 520 F.3d 1286, 1288-89 (11th Cir. 2008) (holding that counsel did not have an affirmative duty to consult with the defendant about an appeal where defendant entered a guilty plea, waived his right to appeal, was sentenced at the bottom of the guidelines range, and did not show that he reasonably demonstrated to counsel an interest in appealing). Accordingly, Sims is not entitled to § 2255 relief.

### III.  CERTIFICATE OF APPEALABILITY

Rule 22(b)(1) of the Federal Rules of Appellate Procedure provides that an applicant for § 2255 relief "cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts provides, "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Section 2253(c)(2) of Title 28 states that a certificate of appealability ("COA") shall not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." A movant satisfies this standard by showing "that reasonable jurists could debate whether (or, for that matter, agree that) the [motion] should

12

have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).  Based on the foregoing discussion of Sims' ground for relief, the resolution of the issue presented is not debatable by jurists of reason, and the undersigned recommends that he be denied a COA.

### IV.  CONCLUSION

For the reasons stated, **IT IS HEREBY RECOMMENDED** that Sims' § 2255 motion, [Doc. 107], as supplemented, [Doc. 150], and a COA be **DENIED**.

The Clerk is **DIRECTED** to terminate the referral of the § 2255 motion to the Magistrate Judge.

**SO RECOMMENDED**, this 9th day of February, 2023.

_____
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE